1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                          )
DENISE MARIE CAGE, *et al.*,              )        No. C13-01741RSL
                                          )
                   Plaintiffs,            )
         v.                               )
                                          )        ORDER COMPELLING
CACH, LLC, *et al.*,                      )        ARBITRATION
                                          )
                                          )
                   Defendants.            )
                                          )
_____)

This matter comes before the Court on "Defendants CACH, LLC, Squaretwo Financial Corporation and Squaretwo Financial Commercial Funding Corporation's Motion to Compel Arbitration." Dkt. # 40. Defendants seek to enforce the arbitration provisions in credit card agreements with plaintiffs. Plaintiffs do not dispute that their claims are within the scope of the relevant arbitration clauses. They instead oppose arbitration on two grounds: (1) that defendants waived the arbitration provisions by initiating lawsuits to collect debts against plaintiffs and participating in this action and (2) that defendants have not adequately demonstrated through admissible evidence that the arbitration clauses bind these plaintiffs and defendants. Having reviewed the parties' memoranda, declarations, and exhibits, the Court finds as follows:

Plaintiff Denise Cage's credit card account with Bank of America (FIA Card Services) includes a provision that states: "Any claim or dispute ('Claim') by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement . . . shall, upon election by either you or us, be resolved by binding

ORDER COMPELLING ARBITRATION

arbitration." Decl. of Christie Coston (Dkt. # 41-2), Ex. 4 at 52. "We" and "us" is defined to include the successors, assigns, purchasers, and their agents. Id. at 54. Plaintiff Ryan King's credit card agreement with Citibank states: "All Claims relating to your account . . . are subject to arbitration . . . ." Decl. of Christie Coston (Dkt. # 41-4), Ex. 8 at 48. Regarding whose claims are subject to arbitration, the agreement states: "Not only ours and yours, but also Claims made by or against anyone connected with us or you . . such as . . . [a] successor . . . [or] [an] assignee . . . ." Id.

Pursuant to the Federal Arbitration Act, a written agreement to arbitrate a dispute "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Although the right to arbitration can be waived, "waiver of the right to arbitration is disfavored because it is a contractual right." United States v. Park Place Assocs., 563 F.3d 907, 921 (9th Cir. 2009) (internal quotations and citations omitted). The party seeking to prove a waiver of arbitration "bears a heavy burden of proof" and must demonstrate: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." Id. (internal quotations and citations omitted).

Plaintiffs argue that defendants have taken two sets of actions that are inconsistent with their right to arbitrate. First, plaintiffs assert that defendants acted inconsistently with their right to arbitrate by filing debt collection lawsuits against plaintiffs, therefore electing "to litigate instead of arbitrate." Response (Dkt. # 53) at 9-10. However, plaintiffs misquote the law and rely on authority that is not applicable in this case. See Response (Dkt. # 53) at 9. Although the decision to file a suit, participate in litigation, and later seek to compel arbitration may constitute a waiver, this case does not involve the party that initiated the lawsuit later seeking to compel

1    arbitration in the same matter.[1] Rather, plaintiffs initiated this separate lawsuit against

2    defendants, and defendants responded by invoking the arbitration agreements. Nor do

3    defendants' earlier debt collection suits against plaintiffs suggest that they initiated litigation that

4    they now seek to abandon in favor of arbitration. Defendants' previous collection actions are

5    separate from the suit plaintiffs now bring against defendants. Bringing a lawsuit for debt

6    collection may result in defendants' waiver of arbitration for that case, but it does not bar

7    plaintiffs from compelling arbitration in that action or bar defendants from invoking arbitration

8    in all future separate causes of action that plaintiffs assert against them. See Schwartz v. CACH,

9    LLC, 2014 WL 298107, at *3 (D.Mass. 2014) (finding "CACH's decision not to invoke

10   arbitration in the earlier state-court collection actions is not relevant" to determining whether

11   defendants waived the right to arbitrate in plaintiffs' subsequent consumer protection suit).

12        Second, plaintiffs point out that defendants "have engaged in discovery and motions

13   practice in this case," which plaintiffs assert constitutes a waiver. However, defendants'

14   participation in this litigation is not inconsistent with the right to arbitrate. The only "motions

15   practice" that defendants have engaged in before moving to compel arbitration involves an

16   unopposed motion for an extension of time, see Dkt. # 10, and answering or responding to

17   plaintiffs, see Dkts. # 11, 14, 25, 32. Although defendants did respond to discovery requests,

18   their communications explicitly reserved the right to arbitrate and notified plaintiffs of their

19   intent to compel arbitration if plaintiffs did not dismiss their claims. See Decl. of Brad Fisher

20

21        ────────────────────

22        [1]Cf. Louisiana Stadium & Exposition Dist. v. Merrill Lynch Pierce, Fenner & Smith, Inc.,
     626 F.3d 156 (2d Cir. 2010) (plaintiff filed a lawsuit, litigated it at length, and then sought to
23   compel arbitration); Nicholas v. KBR, Inc., 565 F.3d 904 (5th Cir. 2009) (plaintiff attempted to
     compel arbitration after the lawsuit she had filed in state court was removed to federal court);
24   Riverside Publishing Co. v. Mercer Publishing LLC, 829 F. Supp. 2d 1017, 1020-21 (W.D.
     Wash. 2011) (citing United Computer Sys., Inc. v. AT & T Corp., 298 F.3d 756, 765 (9th Cir.
25   2002)) (plaintiff's initiation of a lawsuit requesting an injunction, actual damages, and a jury trial
     without mention of arbitration satisfied the first two prongs of a waiver of arbitration on those
26   issues).

     ORDER COMPELLING ARBITRATION          -3-

1  (Dkt. # 60), Ex. A. Defendant Kirkland Law Group did cooperate with discovery and participate

2  in the plaintiffs' Fed. R. Civ. P. 30(b)(6) deposition, but only with an express denial of a waiver

3  of arbitration and notification of their request to join the motion to compel arbitration. See Decl.

4  of Claire Been (Dkt. # 62), Ex. A at 5-6. Because defendants' acts that plaintiffs claim are

5  inconsistent with the right to arbitrate were taken with defendants' express reservation and

6  communication of such rights, defendants did not waive their right to enforce the arbitration

7  agreement.

8       Plaintiffs also challenge the arbitration agreement by asserting that defendants cannot

9  demonstrate through admissible evidence that plaintiffs' credit card accounts were assigned to

10  defendants. Defendants offer multiple exhibits supported by the declaration of Christie Coston, a

11  records custodian of defendant CACH, to prove the assignment of plaintiff Cage's account from

12  FIA Card Services, N.A. directly to CACH and plaintiff King's account from Citibank South

13  Dakota, N.A. directly to CACH. See Decl. of Christie Coston (Dkt. # 41). Plaintiffs claim the

14  declaration is hearsay and the business records lack sufficient indicia of trustworthiness to

15  qualify for the business records exception to the rule against hearsay.

16       Under the business records hearsay exception, a business's records custodian or other

17  qualified witness may authenticate documents from transactions in which the business was

18  involved, even if that witness did not personally witness the transaction. See Fed. R. Evid.

19  803(6). Where business records involve a chain of multiple assignments, each transaction

20  requires supporting testimony from a qualified witness with knowledge of the assignee's record

21  keeping procedures in order to qualify for the hearsay exception. See Webb v. Midland Credit

22  Mgmt., Inc., No. 11-C-5111, 2012 WL 2022013 (N.D. Ill. May 31, 2012) (cardmember

23  agreement was transferred four times; records custodian for final assignee could authenticate

24  final assignment, but could not lay the foundation for the previous three assignments). Here, in

25  contrast, FIA and Citibank assigned the respective plaintiffs' accounts directly to CACH without

26  any intervening transactions. See Decl. of Coston (Dkt. # 41), Ex. 2 (agreement conveying

ORDER COMPELLING ARBITRATION          -4-

1   ownership of plaintiff Cage's account from FIA to CACH), Ex. 6 (agreement conveying

2   ownership of plaintiff King's account from Citibank South Dakota, N.A. to CACH).

3        The Court finds that the exhibits showing the assignment of plaintiffs' accounts to

4   defendants qualify as business records because Coston's declaration provides an adequate

5   foundation for the records. Coston asserts that she is an agent of CACH and was appointed as a

6   records custodian by the manager. She is familiar with the CACH's recordkeeping systems, has

7   reviewed CACH's business records relating to these transactions, and asserts that the records

8   represented in Exhibits 2-9 were created from information transmitted by a person with

9   knowledge near the time of the event and kept in defendant CACH's regular course of business.

10  Decl. of Coston (Dkt. # 41), at 2. Plaintiffs provide no specific reason to doubt the

11  trustworthiness or reliability of the records other than the fact that they were adopted from

12  another business. Although some of the records were originally created by businesses other than

13  CACH, "records a business receives from others are admissible under Federal Rule of Evidence

14  803(6) when those records are kept in the regular course of business, relied upon by that

15  business, and where that business has a substantial interest in the accuracy of the records." <u>MRT</u>

16  <u>Construction Inc. v. Hardrives</u>, 158 F.3d 478, 483 (9th Cir. 1998) (citing <u>United States v. Childs</u>,

17  5 F.3d at 1333-34, 1334 n.3 (9th Cir. 1993)). Coston confirms that the documents originally

18  created by other businesses "have been incorporated into the business records of CACH, and are

19  relied upon by CACH in conducting its business." Decl. of Coston (Dkt. # 41), at 2. In addition,

20  CACH's decision to file debt collection actions against plaintiffs for the outstanding balance on

21  these accounts indicates that defendants trusted and relied upon the accuracy of the records that

22  it incorporated into its own course of business upon assignment of the accounts.

23       Finally, plaintiffs summarily assert that the arbitration provision does not bind plaintiffs

24  because defendants have failed to submit authenticated credit card agreements containing the

25  arbitration provisions. Response (Dkt. # 53) at 13. However, as the Court has discussed,

26  defendants have sufficiently authenticated the business records that defendant CACH

ORDER COMPELLING ARBITRATION                    -5-

1    incorporated into its own records through the assignment of plaintiffs' accounts. These records

2    include the credit card agreements that plaintiffs entered into with FIA and Citibank South

3    Dakota, N.A., respectively. Decl. of Coston (Dkt. # 41), at 3, 5. Although plaintiffs have not

4    signed the credit card agreements, their signatures are not necessary to bind plaintiffs to the

5    agreements. Use of a credit card and the failure to invoke an opt out provision is sufficient to

6    bind plaintiffs to those agreements. Stinger v. Chase Bank, USA, NA, 265 F.App'x 224, 227

7    (5th Cir. 2008) ("By using the cards, [plaintiff] demonstrated an intent to be bound by the terms

8    of the [cardmember agreements] and thus agreed to the arbitration provisions in the

9    [cardmember agreements]"); see also Guerrero v. Equifax Credit Info. Servs., Inc., CV 11-6555

10   PSG PLAX, 2012 WL 7683512 (C.D. Cal. Feb. 24, 2012) (plaintiff's use of the credit card and

11   decision not to opt out after the terms changed to add a binding arbitration provision bound

12   plaintiff to a valid arbitration provision). Plaintiffs do not dispute defendants' claims that

13   plaintiffs were issued and used the credit cards. Therefore, defendants may invoke the arbitration

14   provisions in the credit card agreements with plaintiffs.

15

16          For all of the foregoing reasons, the motion to compel arbitration is GRANTED.

17   Plaintiff's claims are hereby DISMISSED. The pending "Motion for Class Certification" (Dkt.

18   # 44) and "Motion to Stay Motion for Class Certification" (Dkt. # 50) are DENIED as moot. The

19   Clerk of Court is directed to enter judgment in the above-captioned matter.

20

21          Dated this 22nd day of May, 2014.

22

23                              Robert S. Lasnik

24                              United States District Judge

25

26

ORDER COMPELLING ARBITRATION              -6-